Date signed March 31, 2010



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In Re: | * | |
| RONNIE LYNN CARMAN | * | Case No.   08-16965DK |
| | * | Chapter   7 |
| | * | |
| Debtor | * | |
| ************************************* | * | |
| STEVEN DECHELLO | * | |
| | * | |
| | * | |
| Plaintiff | * | Adversary   Proceeding No. |
| vs. | * | 08-00635DK |
| RONNIE LYNN CARMAN | * | |
| | * | |
| | * | |
| Defendant | * | |

## MEMORANDUM OF FINDINGS AND CONCLUSIONS

This adversary proceeding was originally commenced by a complaint filed by the Plaintiff (hereafter "DeChello") asserting that four payments made by DeChello to Carman Boats, Inc. were obtained by the fraud or misrepresentation of the Defendant (hereafter "Ronnie Carman") creating a non-dischargeable indebtedness pursuant to 11 U.S.C. § 523(a)(2). The trial upon the adversary proceeding was conducted on June 4, 2009, at the conclusion of which the court made findings and

conclusions and entered an Order denying the relief requested by DeChello.  That Order was a final order of a court of record pursuant to 28 U.S.C. § 151 and 28 U.S.C. § 157(b)(1) and (2)(I).

DeChello noticed a timely appeal to the United States District Court for the District of Maryland.

On November 18, 2009, the United States District Court for the District of Maryland (Bennett, J.) entered a Memorandum Opinion determining that the Order of the United States Bankruptcy Court should be reversed and remanded for further fact finding on certain questions set forth in the opinion.  That Memorandum stated that the Bankruptcy Court's decision was "REVERSED and REMANDED for fact finding as to whether Carman and/or his Agent Tatterson committed fraud by omission when the October 16, 2006 and November 13, 2006 payments of figures $33,000.00 were accepted from DeChello."  An Order was entered contemporaneously with that Memorandum which ordered that: "the Order of the Bankruptcy Court is REVERSED and REMANDED for additional findings of fact with respect to payments of $33,000.00 made in October and November of 2006."

On December 9, 2009, the United States District Court entered an Amended Memorandum Opinion clarifying that the further fact finding required to be made by the United States Bankruptcy Court was by examination of the trial record.  Specifically the Amended Memorandum provided that the reversal and remand was to "make further findings from the record as to whether Carman and/or or his Agent Tatterson committed fraud by omission when the October 16, 2006 and

November 13, 2006 payments of $33,000.00 were accepted from DeChello."[1]

Although the DeChello (as Appellant) argued that the trial court committed errors in its evidentiary rulings upon certain matters, the District Court found no error in such rulings.[2] Accordingly, the remand did not return the matter to the United States Bankruptcy Court for retrial. Instead, the United States District Court in its Amended Memorandum Opinion found that the findings of fact made by the Bankruptcy Court were incomplete as to provide a record for review to the United States District Court upon one of the theories advanced by DeChello as it pertains to two of the four payments that were obtained by the Defendant's corporation, Carman Boats, Inc..

The United States Bankruptcy Court had determined that the DeChello failed to prove by the applicable preponderance of evidence standard that Ronnie Carman, an individual, had made affirmative misrepresentations in obtaining the funds in question. That determination was not reversed by the District Court. However, the District Court determined that the Bankruptcy Court's findings did not include findings on the question of whether or not Ronnie Carman committed

---

[1] Prior to the effective date of the Bankruptcy Reform Act of 1978, Section 2 of the Bankruptcy Act of 1898 codified under Title 11 of the United States Code provided that the United States District Courts exercised bankruptcy jurisdiction and could be aided by referees, later denominated as bankruptcy judges functioning much like special masters with procedure governed by general orders. General Order 47 provided that a District Judge in reviewing the report of a referee could among other relief require that the matter be returned to the referee to receive further evidence. *See Wohlman v. AIC Financial Corp.*, 459 F.2d. 80 (4th Cir. 1973). However, the Bankruptcy Reform Act of 1978 repealed the Bankruptcy Act of 1898 including all provisions of Title 11 of the United States Code and replaced those statutes in part by the provisions of Title 28 referred to in part hereinabove. The substantive law of bankruptcy was similarly repealed and replaced by the current Title 11 of the United States Code now referred to as the United States Bankruptcy Code. Similarly, general orders were replaced by Federal Rules of Bankruptcy Procedure enacted by the Judicial Conference of the United States and approved by Congress. Pursuant to 28 U.S.C. § 158(a) appeals of final orders of this Court are to be considered by the United States District Court for the District of Maryland in the same manner as appeals in civil proceedings are taken to the Courts of Appeals from District Courts. 11 U.S.C. § 158(c)(2).

[2] See Amended Memorandum Opinion, Page 8.

3

misrepresentation or fraud by omissions under circumstances where a failure to speak or act created a false impression.  The District Court limited this inquiry to the last two payments received by Carman Boats, Inc. finding that there was "nothing in the record indicating that Carman [referring to Ronnie Carman, individually] realized he would not be able to fulfill his contractual obligations when he accepted DeChello's $8,000.00 deposit on July 24, 2006.  Furthermore, there is nothing in the record indicating any deception when the first $33,000.00 payment was made on August 3, 2006 to start completion of the hull.  These factual findings were not clearly erroneous and were not an abuse of discretion."[3]

On December 11, 2009, this Court entered an Order requiring the parties to submit proposed additional findings of fact upon the limited issues as directed by the Amended Memorandum Opinion and Order from the United States District Court remanding the matter to the United States Bankruptcy Court.  Each party filed such proposed findings.  A hearing was then held on February 17, 2010, after which the Court held the matter under advisement to consider the additional findings and conclusions that should be made upon the record produced at trial.

As an initial matter, the proposed additional findings submitted by counsel for DeChello were not limited to facts relevant to the October and November 2006 payments.  Similarly, at the hearing held on February 17, 2010, counsel for DeChello argued that notwithstanding the language of the Order of Remand, the Bankruptcy Court should consider anew the question of whether any

---

[3] Carman Boats, Inc., the only party that contracted to deliver the boat to DeChello, is a debtor in a separate bankruptcy case, 08-16968. DeChello therein filed a separate adversary proceeding against Carman Boats, Inc., adversary proceeding 08-00632, seeking to recover funds paid to Carman Boats, Inc. and to determine Carman Boats, Inc. liability for such refund to be a non-dischargeable debt.  However, DeChello never returned service on the summons issued nor responded to an Order to Show Cause as to why that adversary proceeding should not be dismissed for want of prosecution.  Consequently the adversary proceeding was dismissed on February 17, 2009.  The court notes that as an entity, Carman Boats, Inc. is not eligible and has not received a discharge in a Chapter 7 proceeding.

payments received by Carman Boats, Inc. from DeChello were as a result of fraud committed personally by Ronnie Carman. As stated thereafter on the record at that hearing, this Court recognized that the Order of the United States District Court for the District of Maryland reversed and remanded for additional findings only with respect to the payments of $33,000.00 each, made in October and November of 2006. This limitation is, of course, appropriate given that the United States District Court in its Amended Memorandum Opinion found that there was nothing in the record from trial indicating that Ronnie Carman realized he would not be able to fulfill contractual obligations when accepting the initial $8,000.00 payment in July nor evidence that there was any deception when the first installment payment thereafter in the amount of $33,000.00 was made on August 3, 2006. Accordingly, this Court's oral ruling at the hearing on February 17, 2010, denied the attempt by DeChello to reargue the entire matter.

The findings set forth hereinafter are in addition to, and not as a replacement for, the findings made by the Court on the record immediately following trial. In reaching the further conclusions set forth hereinbelow, all findings are considered by the Court.

DeChello's breach of contract and fraud claims are based on a contract between DeChello and Carman Boats, Inc. Ronnie Carman individually was not a party to the contract. In general, corporate officers and shareholders are not individually liable for the debts of a corporation. *See In re Moore*, 365 B.R. 589, 607 (Bankr. D. Md. 2007). However, when a corporate officer personally commits fraud, even though acting in the name of the corporation, that officer can be held personally liable for the ensuing damages. *See Wilcoxon Constr., Inc. v. Woodall*, 177 B.R. 517, 522 n.2 (Bankr. D. Md. 1995). Further, Section 523(a)(2)(A) of the Bankruptcy Code exempts from discharge any "debts for money, property, or services . . . obtained by — (A) false pretenses, a false representation, or actual fraud." Thus, in order to hold Ronnie Carman personally liable and exempt his consequent indebtedness to DeChello from discharge, DeChello must show that Ronnie

5

Carman personally used "false pretenses, a false representation or actual fraud" in order to obtain one or both of the final two payments (Installment Payments 2 and 3).

In order to prevail on a complaint objecting to discharge under Section 523(a)(2)(A), a plaintiff must establish by a preponderance of the evidence that the defendant committed fraud. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed. 755 (1991). In order to establish fraud, a plaintiff must show that (1) the defendant made a representation; (2) the defendant knew the representation was false when he made it; (3) the defendant made the representation with intent to defraud plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered damages as a proximate result of the defendant's false representation. *Dubois v. Lindsley*, 388 B.R. 661, 668 (Bankr. D. Md. 2008). "A misrepresentation can be any words or conduct which produce a false or misleading impression of fact in the mind of another." *Id.* at 669. As recognized by the Court in *Lindsley* and by the District Court in its Amended Memorandum, the misrepresentation may be made by an omission where the circumstances are such that a failure to speak or act creates a false impression. *Id*.

Certainly, if Ronnie Carman requested payments from DeChello for completion of work upon the boat at a time when Ronnie Carman knew that the business would not be able to perform the contract and complete the boat, the omission of that inability in a communication by Ronnie Carman to DeChello requesting money would constitute a misrepresentation or fraud as those terms are used in Section 523(a)(2). The communications requesting funds must have been made by, or at the instruction of, Ronnie Carman, as the basis for liability and the determination of non-dischargeability of debt is an assertion of fraud or misrepresentation performed by Ronnie Carman personally and not by others who may have been employed in the business.

There is no factual dispute that the requests for the October and November payments were solely communicated by Robin Tatterson ("Tatterson") the Office Manager for Carman Boats, Inc.

6

The task of this court making further findings is inhibited by sparse evidence in the record as to what instructions were given to Tatterson by Ronnie Carman and as to what knowledge Ronnie Carman had as to the financial inability of Carman Boats, Inc. at the time of any such instructions. If the evidence is insufficient to convince the trier of fact that it is more likely than not that each element required to prove liability and non-dischargeability occurred, judgment must be entered for Ronnie Carman as DeChello bares the burden of proof by the preponderance standard as remarked upon hereinabove.[4]

Although all communications requesting the last two payments received were made by Tatterson, such communications represent representations made by Ronnie Carman if Ronnie Carman instructed Tatterson to make such representations. The District Court in its Memorandum Opinion referred to Tatterson as "Carman's Agent." The evidence proves without doubt that Tatterson was an employee of the corporation Carman Boats, Inc. Representations made by Tatterson in that capacity, but without instruction by Ronnie Carman cannot be attributed to Ronnie Carman as representations for purposes of the application of Section 523(a)(2). However, although Tatterson was not called to testify, Ronnie Carman admitted in a deposition taken on May 2, 2008, that he instructed Tatterson to send both the October 10th and October 24th e-mails to DeChello requesting additional payments. (Carman Dep. 22::3-23:17, 36:4-36:15, May 5, 2008). Based upon this admission, the court found in the findings and conclusions announced at the conclusion of the trial, that the e-mails by Tatterson were communications made by the direction of Ronnie Carman

---

[4] Concerning the factual circumstances of the requests by Tatterson for the 2nd and 3rd installment payments received from DeChello in October and November of 2006, the District Court in its Amended Memorandum Opinion repeatedly found the record to be "unclear," "incomplete" or "ambiguous." Amended Memorandum at p. 10-11.

7

and therefore must be considered as communications from Ronnie Carman to DeChello.[5] (Trial Transcript at 106).

On October 9, 2006, Tatterson wrote an e-mail DeChello to inform him the work on the hull would be finished that day, Carman Boats, Inc. would begin working on the cabin in a few days, the engines would be ordered in two weeks, and the tank and under deck components would be ordered in one week. The e-mail also requested the second installment payment.[6] DeChello made that payment on October 16, 2006.

DeChello asserts that the e-mail of October 9 was a misrepresentation and fraudulently made because it did not inform DeChello that Ronnie Carman's wife's illness was requiring that Ronnie Carman spend time away from the business, nor inform DeChello at any time that Carman Boats, Inc. had not prioritized DeChello's project, had obligations and disputes with other boat purchasers and that a worker at Carman Boats, Inc. had a problem with alcohol. DeChello also argues that Ronnie Carman should have told DeChello that the competing obligations, personal difficulties and financial reversals rendered it impossible to complete DeChello's boat in a timely fashion. Nowhere in the record is there evidence to support that Ronnie Carman knew or should have know on October 9, 2006, that it was impossible to complete DeChello's boat. Instead, Ronnie Carman testified to the contrary. Ronnie Carman testified that it was not until sometime in November or December that he learned that Tatterson had never ordered the engine. (Trial Transcript at 69-71). And in his deposition, Ronnie Carman testified that he could build a boat from start to finish in five to six weeks if he focused only on that one boat. (Carman Depo.9:1-9:4). Thus

---

[5] If the standard of proof required of Plaintiff was clear and convincing as required by the law of Maryland to prove fraud, it is likely this court would find the evidence does not rise to that higher standard.

[6] The "second installment" payment was the third payment due under the contract that was paid by DeChello.

8

even if the hull had not yet been pulled on October 9, 2006, there is no reason to believe that it was impossible for Carman Boats, Inc. to deliver the boat on April 1, 2007 as promised. DeChello points to the fact that the hull was not pulled from the mold in October of 2006, after the October 9, 2006 e-mail had promised such performance. The failure to accomplish a promise of future performance under contract is not by itself proof of fraud or misrepresentation. *Merenstein v. St. Paul Fire & Marine Ins. Co.*, 142 Fed. Appx. 136, 139 (4th Cir. 2005).

The record is simply insufficient to support a finding by this trier of fact that it is more probable than not that Ronnie Carman knew or should have known on October 9, 2006 that the performance of future events described in the Tatterson e-mail of that date would not, or could not occur. Therefore, the Court does not find that a failure by Ronnie Carman on October 9, 2006 to communicate a factual statement as to a likelihood that performance would not occur, was a fraudulent representation by omission. DeChello has not pointed to any evidence showing that, at the time Tatterson sent the e-mail, Ronnie Carman did not intend to pull the hull or order the engines as promised. Instead, the evidence suggests that, at the time Tatterson sent the October 9th e-mail, Ronnie Carman honestly believed he would be able to complete the tasks outlined in that e-mail.

From the record this court must conclude as to the payment made by DeChello on October 16, 2006, that such payment did not create an indebtedness owed by Ronnie Carman as a result of a fraudulent misrepresentation by Ronnie Carman.

The installment payment made on or about November 13, 2006 presents a different story. The evidence and testimony in the record make it clear that when Tatterson wrote an e-mail to DeChello on October 24, 2006, Tatterson knew that the money from DeChello's payment on October 16th had not been used to purchase the engines as promised. Further, when DeChello wrote an e-mail to Tatterson to inquire about why the engines had not been purchased after his last

9

payment, Tatterson failed to respond.

The record shows that at the time of Tatterson's October 24th e-mail, both Tatterson and Ronnie Carman, more likely than not, knew of the precarious position of the business. Carman should have caused this information to be disclosed when asking DeChello for more money. By failing to do so, the October 24th request for an additional payment was incomplete and constituted fraud by omission. Had Tatterson or Ronnie Carman informed DeChello that the second installment payment had been used to pay Carman Boats' general bills, rather than to purchase engines for DeChello's boat as promised, it is unlikely DeChello would have sent another payment. Thus, the payment of $33,000 made on or about November 13, 2006 was induced by fraud by Ronnie Carman.

There is no question that DeChello was damaged by the false representation in that DeChello paid funds for which he did not receive goods and has been unable to recover the funds paid. Some question does arise as to whether the damage was incurred by DeChello in justifiable reliance upon Tatterson's request for the third installment payment. DeChello questioned Tatterson by e-mail as to why the engines had not been purchased with the funds sent in October and he received no response from Tatterson. Justifiable reliance has been defined by the United States Supreme Court as "the standard applicable to a victim's conduct in cases of alleged misrepresentation and. . . '[i]t is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.'" *Field v. Mans*, 516 U.S. 59, 71, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995) (citing W. Prosser, Law of Torts § 108, p. 718 (4th ed.1971)). While DeChello's e-mail demonstrates concern by DeChello as to why the engines had not already been ordered as earlier promised, the circumstances did not rise to the level of being a warning of deceit requiring

10

investigation.

Accordingly, the Court holds that Ronnie Carman is indebted to Steven DeChello in the amount of $33,000 which indebtedness is not dischargeable pursuant to Section 523(a)(2). All other alleged indebtedness alleged in the Complaint are found not excepted from discharge and have been discharged by the Order of Discharge entered in the underlying Bankruptcy Case. An Order and Judgment in conformity with this Memorandum will be entered.


cc:     All Counsel
        Debtor
        U.S. Trustee

**End Of Memorandum**